### AFFIDAVIT OF ATF SPECIAL AGENT JOHN CHRISTENSEN

I, Special Agent John Christensen depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I began working with ATF in September 2020. I am a graduate of the ATF National Academy Special Agent Basic Training and the Federal Law Enforcement Training Center Criminal Investigator Training Program. Before becoming an ATF Special Agent, I was a New York City Police Department ("NYPD") Patrol Officer at the 115 Precinct for four years. During my time as a Patrol Officer, I patrolled a designated area of the city via police cruiser to preserve law and order, and to prevent and discover the commission of crime. I conducted such duties as: monitoring, noting, reporting, and investigating suspicious persons and situations, safety hazards, and unusual or illegal activity in patrol areas. I have conducted preliminary investigations, gathered evidence, interviewed witnesses and victims, conducted arrests, and testified as a witness in court. Since joining ATF, I have investigated federal firearms violations, including participating in the controlled purchases of firearms, conducting surveillance of firearms traffickers, conducting interviews of suspects, written and/or participated in the execution of search warrants, and conducting electronic surveillance. I have investigated firearms trace data, cellular phones, and email accounts in which firearms sales are facilitated.

2. Based on my training and experience as an ATF agent, I am familiar with federal firearms and controlled substances laws. In this regard, I know that it is a violation of 18 U.S.C. § 924(c) for a person to possess a firearm in furtherance of a drug trafficking crime. I further know that it is a violation of 21 U.S.C. § 841(a)(1)(A) to possess a controlled substance with the intent to distribute it and it is a violation of 21 U.S.C. § 846 to conspire to distribute a controlled

1

substance. I submit this affidavit in support of a criminal complaint against Jaquori LYONS and Dawan SEARCY for violating the above federal statutes.

3. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents, witnesses, public records, and database checks. This affidavit is intended to show merely that there is sufficient probable cause for the requested federal complaint and does not set forth all of my knowledge about this matter.

### LYON'S POSSESSION OF FENTANYL PILLS AND A FIREARM

4. On or about February 17, 2021, at approximately 6 a.m., members of the Boston Police Department ("BPD") SWAT Team and other BPD officers executed a state search warrant at an apartment used by LYONS located at 145 Millet Street, Apartment #3, Dorchester, MA. LYONS had identified this apartment as his residence to state probation authorities pursuant to his pretrial release in a pending state case, and this fact was confirmed through law enforcement contact at the location. Based on prior investigations and interactions with law enforcement, LYONS is a member/associate of a criminal organization herein referred to as the Heath Street Gang. The state search warrant was based on evidence that LYONS, along with numerous other identified Heath Street Gang members/associates, had illegally possessed several firearms leading up to the execution of the search warrant on February 17.

5. Pursuant to the execution of the state search warrant, officers knocked and announced themselves at the apartment used by LYONS. Officers subsequently entered the apartment and found LYONS in the apartment along with three female occupants, one of whom was in a relationship with LYONS. There were no other males in the apartment at the time that

the BPD officers executed the state search warrant on February 17. For the execution of the search warrant, officers were not only involved in entering the apartment used by LYONS but were also posted outside the apartment building. An officer posted outside observed that, at or about the time that officers attempted initial entry into the apartment, a male came to one of the apartment's windows, opened the window and the screen on the window, and was holding something in his hand. The officer thereafter flashed a light into the window to see what the male was attempting to do. The male backed away from the window. The only male in the apartment was LYONS. Officers subsequently searched the room where LYONS was observed at the window with an object in his hand and seized a loaded handgun from under a couch in the room. The handgun was a 9mm Beretta semi-automatic pistol, bearing serial number X46831Z, which was loaded with 9mm ammunition and had a round in the chamber of the pistol. The Beretta pistol was subsequently tested by the BPD and found to be operational. These facts are consistent with LYONS attempting to discard the firearm that he possessed in the apartment due to the presence of the officers executing the search warrant.

6. Officers also searched a bedroom in the apartment that was identified as being used by LYONS. In a dresser, officers found and seized pay stubs in LYONS' name. Officers also seized (1) a plastic baggie with approximately 19 blue pills which were marked "M" on one side and "30" on the other side, and (2) a plastic baggie containing an off-white substance. Based on communications with other law enforcement officers/agents, I am aware that the markings on the pills are consistent with commercially manufactured oxycodone pills. Based on my training and experience, I am aware that drug traffickers will sell pills that contain fentanyl but are made to appear like oxycodone pills. The pills have been field-tested and the

results were consistent with the presence of fentanyl.  The off-white substance has been tested and the results were consistent with the presence of cocaine base.  In a social media posting on or about September 10, 2021, LYONS posted a video of a bag with approximately 20 blue pills consistent with the pills recovered from the apartment and included the phrase "Get Your/ Money Up/ Not The/ Funny Up."  In a social media posting on or about July 11, 2022, LYONS posted a video of a bag filled with blue pills consistent with the fentanyl pills seized on February 17, 2021, with the words "They Here."  These postings show that LYONS was distributing fentanyl pills (like the pills seized in the apartment on February 17) over an extended period of time and was using social media to advertise the pills for sale.  Based on these facts, there is probable cause to believe that LYONS possessed the seized fentanyl pills in the apartment for distribution in violation of 21 U.S.C. § 841(a)(1)(A).

**SEARCY AND LYONS TRAFFICKING IN MARIJUANA WITH A LOADED FIREARM**

7. On or about October 28, 2021, BPD officers along with Massachusetts State Police ("MSP") troopers were conducting surveillance in the area of 153 Washington Street in Somerville, MA, in order to execute an arrest warrant issued for LYONS.  At approximately 7:05 p.m., BPD officers observed two males exit the location and walk towards a black Jeep Grand Cherokee in a nearby parking lot.  Officers were aware that the Jeep was registered in Massachusetts to SEARCY, who, like LYONS, has been identified as a member/associate of the Heath Street Gang.  Based on the surveillance, officers tentatively identified the two individuals walking to the Jeep as LYONS and SEARCY.  Officers observed both males get into the Jeep and drive out of the parking lot.  The vehicle was observed to take right on Washington Street. The vehicle then conducted an abrupt U-turn and parked in the bike lane near 151 Washington

Street.  Officers and troopers believed that these actions constituted a moving violation under Massachusetts law.  Based on the moving violation, BPD officers and an MSP trooper activated the lights on an unmarked vehicle and conducted a traffic stop of the Jeep.

8.      As the BPD officers and the MSP trooper approached the Jeep, they observed that it had heavily tinted windows, which were rolled up.  Due to security concerns about both SEARCY and LYONS, the two were instructed to roll down the windows of the Jeep.  The trooper, who was approaching the driver's side of the vehicle, was able to observe a silhouette of the driver through the rear windshield and observed the driver lean forward and out of sight. SEARCY was subsequently determined to be the driver of the vehicle.  Based on my training and experience, and communications with other officers/agents, SEARCY's actions in bending forward and out of sight of the trooper are consistent with concealing some form of contraband. SEARCY and LYONS did not immediately roll down the windows of the Jeep as instructed by law enforcement.  Eventually, SEARCY rolled down the driver's side window.  The trooper informed SEARCY, the driver, about the moving violation.  The trooper observed that SEARCY was breathing heavily.  SEARCY was also fidgeting and touching his face while looking in various directions.  The trooper instructed SEARCY to put the vehicle in park and shut off the vehicle.

9.      Due to safety concerns, SEARCY and LYONS were removed from the Jeep and pat-frisked.  LYONS was removed from the front passenger seat.  Also, due to safety concerns, the passenger compartment of the vehicle was searched.  A trooper identified that the control panel of the drivers' door was loose and not attached to the door.  The trooper lifted the panel and observed the handle of a firearm.  This hiding location was directly next to SEARCY before

he was removed from the vehicle and was easily accessible by SEARCY.  Based on his prior actions in leaning over and out of sight, there is probable cause to believe that SEARCY had physical possession of the firearm and placed it into the hiding place in the door as law enforcement officers approached.  In this regard, as noted above, the vehicle was registered to SEARCY.  The firearm was a P-80 9mm semiautomatic pistol which was loaded with 9mm ammunition.  A round of ammunition was in the chamber of the seized pistol.  The pistol was not commercially manufactured and is colloquially known as a "ghost gun."  The pistol was subsequently tested-fired by the BPD and found to be operational.

10. Officers and troopers also found and seized approximately 117 plastic bags of designer marijuana with at least some of the marijuana packaged for sale.  It was identified as being marijuana through the training and experience of the officers and troopers.  The bags of marijuana were found conspicuously dispersed throughout the vehicle, including, in the vehicle's rear seat area and front passenger seat.  Based upon communications with other officers/agents, as well as my training and experience, the marijuana had a value of several thousand dollars.  Officers/troopers also seized approximately $900 from SEARCY's person – consistent with drug trafficking proceeds.  Officers/troopers also found and seized approximately $6,941 which was concealed in the front passenger door – consistent with drug trafficking proceeds.  As noted above, LYONS was the passenger and thus had been sitting in the area where the currency consistent with drug proceeds was found hidden.

11. Based upon the significant amount of marijuana found throughout the vehicle, along with U.S. currency consistent with the proceeds of drug trafficking being found on SEARCY's person and hidden next to LYONS, there is probable cause to believe that SEARCY

and LYONS possessed the marijuana with the intent to distribute it and conspired to distribute the marijuana in violation of 21 U.S.C. §§ 841(a)(1)(A) and 846.   In addition, there is probable cause to believe that SEARCY possessed a firearm in furtherance of the above drug trafficking crimes, in violation of 18 U.S.C. § 924(c).   In this regard, the evidence supports that SEARCY was armed at the time that he and LYONS were approached by law enforcement officers and subsequently hid the firearm in the door of the vehicle.   As set forth above, at the time that he was in possession of the firearm, SEARCY, along with LYONS, were engaged in drug trafficking crimes as established by the seized marijuana (which had a value of thousands of dollars) and the seized currency consistent drug proceeds.   Finally, there is probable cause to believe that it was reasonably foreseeable, given the value of the controlled substances in the vehicle as well as the drug proceeds in the vehicle, that one of the co-conspirators in the vehicle would be armed with a firearm to protect both the drugs and proceeds, and, thus, both SEARCY and LYONS, as co-conspirators, would be liable for the possession of the seized firearm in furtherance of this drug trafficking conspiracy.

12. Based on the above, there is probable cause to believe that on February 17, 2021, Jaquori LYONS did violate 21 U.S.C. § 841(a)(1)(A) by possessing fentanyl pills with the intent to distribute them.

13. Based on the above, there is probable cause to believe that on October 28, 2021, Jaquori LYONS and Dawan SEARCY did violate federal law including: (1) 21 U.S.C. § 841(a)(1)(A) and 21 U.S.C. § 846 by possessing marijuana with the intent to distribute it and by conspiring to distribute marijuana, and (2) possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

*John Christensen*
John Christensen
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this 24th day of May, 2023.

HON. DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE

8